Montclair Nursing Center, appellee, v. Brenda Wills and
Ronald E. Sorensen, Commissioner of Labor, appellants.

371 N.W.2d 121

Filed July 26, 1985.   No. 85-012.

Paul D. Kratz, for appellant Sorensen.

Gary L. Fischer, for appellant Wills.

Patrick J. Barrett of McGrath, North, O'Malley & Kratz,
for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale,
Shanahan, and Grant, JJ.

Krivosha, C.J.

Brenda Wills appeals from a judgment entered by the district
court for Douglas County, Nebraska, finding that she
voluntarily terminated her employment with appellee,
Montclair Nursing Center, without good cause and thereby was
disqualified from receiving unemployment insurance benefits
during the period prescribed by Neb. Rev. Stat. § 48-628
(Reissue 1984). While Wills has assigned a number of errors, in
essence all of them resolve into but a single assignment which

requires us to determine as a matter of fact whether the district court erred in finding that Wills left her employment voluntarily and without good cause. That is so because the scope of review in this court is de novo on the record from the district court, see *McClemens v. United Parcel Serv.*, 218 Neb. 689, 358 N.W.2d 748 (1984), and it is our duty to retry the issues of fact involved and the findings complained of and reach independent conclusions with respect thereto, see *Taylor v. Collateral Control Corp.*, 218 Neb. 432, 355 N.W.2d 788 (1984). We have now reviewed the record de novo, and we conclude that the district court was correct. We therefore affirm the judgment.

Wills began her employment at Montclair Nursing Center as a licensed practical nurse on September 8, 1982. The application she filled out at that time listed the hours she desired to work as "full-time 3-11," or "part-time." The application indicates that she was hired at a rate of $5.80 per hour "F.T. 3-11," presumably meaning full time, 3 to 11 p.m. shift. At this point the evidence appears in conflict.

On October 11, 1983, Montclair informed Wills that she would either have to resign or accept employment at another nursing station on the 11 p.m. to 7 a.m. shift. Montclair maintains that the ultimatum resulted from complaints that Montclair had received about Wills from other employees who refused to work with her on the 3 to 11 p.m. shift. While Montclair representatives spoke in terms of a persistent pattern of inability to get along with coworkers, the evidence obtained from an "Employee Evaluation" form, admitted into evidence, seems to contradict those statements. The evaluation, dated September 14, 1983, lists Wills' "job attitudes" as "good" or "very good." Wills refused to accept the 11 p.m. to 7 a.m. shift, maintaining that she was unable to work the night shift because of a liver problem. No medical evidence was provided the employer at that time or at any subsequent time, nor was any medical evidence concerning her liver condition offered into evidence throughout the administrative proceedings in this case or before the district court when additional evidence was adduced. The contention that working the 11 p.m. to 7 a.m. shift will affect Wills' liver is established only by her own

medically unsupported statements. Furthermore, we are not advised from any evidence found in the record what the liver condition is or how working on the 11 p.m. to 7 a.m. shift would produce a problem. Additionally, on her application for employment Wills responded "good" when asked about her "present state of health."

Before she terminated her employment she amended the resignation form given her by Montclair to read "staff members feel I'm incompatible." No mention of her health was made on the form, although space was available to make such comment, and it is clear that Wills modified the form to more fully reflect what she believed to be the facts. Upon resigning her employment with Montclair, Wills filed a claim for unemployment insurance benefits. The Department of Labor claims deputy imposed an 8-week disqualification because he determined that Wills left her employment voluntarily and without good cause. On appeal the Nebraska Appeal Tribunal reversed the determination of the claims deputy, and Montclair appealed that decision to the district court for Douglas County. The district court reversed the appeal tribunal after permitting the parties to produce additional evidence.

Section 48-628(a)(1) provides:

An individual shall be disqualified for benefits:

(a)(1) For the week in which he or she has left work voluntarily without good cause, if so found by the Commissioner of Labor, and for not less than seven weeks nor more than ten weeks which immediately follow such week, as determined by the commissioner according to the circumstances in each case.

The phrase "to leave work voluntarily" has been defined to mean " ' "to intentionally sever the employment relationship with the intent not to return to, or to intentionally terminate, the employment." ' " *McClemens v. United Parcel Serv.*, 218 Neb. 689, 690, 358 N.W.2d 748, 750 (1984); *Nuss v. Sorensen*, 218 Neb. 703, 358 N.W.2d 752 (1984). Furthermore, the burden of proof under § 48-628(a)(1) is upon the employee to show that he or she left his or her employment for good cause. See *Glionna v. Chizek*, 204 Neb. 37, 281 N.W.2d 220 (1979).

Wills maintains that she was compelled to terminate her

employment because of the employer's insistence that she work the night shift. This, in and of itself, is not sufficient to establish good cause. Though there appears to be no specific Nebraska decision on the point, the majority rule, as conceded by the Commissioner of Labor, is that a change in hours, absent some compelling circumstances, does not rise to the level of good cause within the meaning of employment security laws. See, *Mosebauer v. Com., Unemployment Comp. Bd., etc.*, 61 Pa. Commw. 269, 433 A.2d 599 (1981); *ABC Auto Parts v. Florida Dept. of Labor, etc.*, 372 So. 2d 197 (Fla. App. 1979). Both Wills and the commissioner argue, however, that there is present in this case a compelling circumstance, that being Wills' health problem. The difficulty with this argument is that but for Wills' unsubstantiated statement that working the night shift would cause her to have problems in the future because of her liver condition, there is no other evidence to support a finding of compelling circumstances. The unsupported statement of Wills is insufficient to meet her burden of proof.

The situation in the instant case is similar to that in *McClemens v. United Parcel Serv., supra* at 693, 358 N.W.2d at 751, wherein we observed: "[N]o matter how the February 9 letter is viewed, the record is devoid of any competent medical evidence which supports a finding of an inability on McClemens' part to perform his work." We held that, absent such evidence, judgment must be entered for the employer.

Other jurisdictions that have examined this issue have held that employees who assert that they voluntarily left their employment for good cause because of medical reasons are required to produce some medical evidence to support that claim. We believe that where there is no competent medical evidence offered to substantiate a claim that an employee's health would be affected by a change in hours, the claimant has failed to meet his or her burden of proving that termination was for good cause because of health reasons. See, *Dornblum v. Com., Unemp. Comp. Bd. of Rev.*, 77 Pa. Commw. 547, 466 A.2d 747 (1983); *Miller v. Catherwood*, 30 A.D.2d 610, 290 N.Y.S.2d 244 (1968); *De Patra v. Administrator*, 25 Conn. Supp. 242, 202 A.2d 153 (1964).

Wills argues that there was some type of contract between

Wills and Montclair to the effect that she would always work the 3 to 11 p.m. shift and, therefore, when the employer changed the contract, Wills was given good cause to terminate. The record simply does not support this claim. Hiring Wills for the 3 to 11 p.m. shift in a facility that requires round-the-clock coverage by employees is insufficient to establish some form of binding contract or to take the case out of the general rule that an employer may change an employee's hours of employment without giving the ·employee good cause to terminate the employment, absent some evidence that the shift change was done for some improper purpose.

The judgment of the district court is therefore affirmed.

AFFIRMED.